IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Gregg Marcel Dixon, | Case No. 9:22-cv-04198-SAL-MHC |
| Plaintiff, | |
| v. | **ORDER** |
| Royal Live Oaks Academy of the Arts & Sciences Charter School, Karen Wicks, Charter Institute at Erskine, Steven Adamson, Martin O'Connor, Stu Rodman, Tony Foster, Gordon Query, Noel Brownlee, Todd Carnes, James E. Clyburn, and Jennifer Clyburn Reed, | |
| Defendants. | |

The matter is before the court on United States Magistrate Judge Molly H. Cherry's report and recommendation, ECF No. 87, issued March 18, 2024. The report addresses three motions to dismiss plaintiff Gregg Marcel Dixon's second amended complaint: (1) defendants Royal Live Oaks Academy of the Arts & Sciences Charter School ("Royal Live Oaks") and Karen Wicks' motion to dismiss, ECF No. 72; (2) defendants James E. Clyburn and Jennifer Clyburn Reed's motion to dismiss, ECF No. 73; and (3) defendants Charter Institute at Erskine ("CIE"), Steven Adamson, Martin O' Connor, Stu Rodman, Tony Foster, Gordan Query, Noel Brownlee, and Todd Carnes' (collectively, the "CIE Defendants") motion to dismiss, ECF No. 74. Also before the court is Wicks and Royal Live Oaks' motion to strike, ECF No. 72. For the reasons below, the court adopts the report and recommendation in full.

## BACKGROUND

Dixon is an African American elementary and middle school teacher, coach, mentor, and administrator who taught at Royal Live Oaks from June 2021 until June 2022. [ECF No. 65,

1

Second Am. Compl. ¶ 2.] Royal Live Oaks is a public charter school that is managed and overseen by CIE. *Id.* ¶ 21. Dixon alleges CIE is required to oversee and operate public charter schools like Royal Live Oaks. *Id.* ¶ 32. CIE's responsibilities include, for instance, managing the ongoing operations of Royal Live Oaks, to include the hiring and firing of teachers and staff. *Id.* Dixon further alleges CIE's board of directors, comprised of defendants Steven Adamson, Martin O'Connor, Stu Rodman, Tony Foster, Gordan Query, Noel Brownlee, and Todd Carnes, itself has a non-delegable duty to oversee and manage Royal Live Oaks' operations. *Id.* ¶¶ 33–39.

Dixon states that he has received awards, and that he "enjoyed a highly successful and exceptionally appreciated career," first in the Jasper County, South Carolina school district and then at Royal Live Oaks. *Id.* According to Dixon, he received many of those awards while teaching at Royal Live Oaks: the School Teacher of the Year and District Teacher of the Year in 2013; the Academic Coach of the Year for the 2017–2018 school year; a South Carolina Department of Education Commendation Letter in 2020; and a EVAAS 5 rating (according to Dixon, the highest rating) as a teacher in 2015, 2016, 2017. *Id.* ¶ 17. He also received performance-based (student performance-based) bonuses from 2012 to 2018 and in 2020 and 2021. *Id.* Finally, Dixon alleges that he consistently received approval ratings from 75% to 95% at Royal Live Oaks from students who participated in online school surveys. *Id.* ¶ 45.

In 2022, Dixon filed paperwork to run for a seat in the United States House of Representatives. *See id.* ¶¶ 18–19. Specifically, he ran for the seat in South Carolina's 6th Congressional District, which was held by Representative James E. Clyburn. *Id.* ¶ 19. According to Dixon, things soon spiraled. Defendants allegedly discovered Dixon intended to engage in political activity and "jointly and collectively" cautioned Dixon he would lose his job if he ran for

the Congressional seat occupied by Congressman Clyburn. *Id.* ¶ 47. Congressman Clyburn's daughter, Jennifer Clyburn Reed, who Dixon alleges is a political advocate and Congressman Clyburn's "supporter and campaign advisor," allegedly "began a campaign to discredit [Dixon] on social media" in April 2022. *See id.* ¶¶ 29, 49. That same month, Congressman Clyburn allegedly "publicly attacked [Dixon] and moved publicly to discredit [Dixon] as a credible candidate for the U.S. Congress and how he, as a Congressman, will bring funding for projects like a new Beaufort-Jasper YMCA of the Low Country facility." *Id.* ¶ 30. On May 10, 2022, Reed allegedly "attacked" Dixon "for his political beliefs and challenge to her father's candidacy." *Id.* ¶ 31. Finally, Dixon alleges Congressman Clyburn blocked and muted Dixon from accessing or posting on Congressman Clyburn's Twitter accounts and, allegedly, deleted Dixon's comments from that Twitter account and prevented Dixon's comments from appearing in comments or reposted comments by other twitter users. *Id.* ¶ 73. Dixon allegedly remains blocked and muted from Congressman Clyburn's Twitter account to this day. *Id.* ¶ 74.

Dixon also alleges his decision to "engage in political activity" led to discord in his professional life. On or around May 12, 2022, defendant Karen Wicks, Royal Live Oaks' Executive Director, informed Dixon that Royal Live Oaks would not renew his contract because of insubordinate behavior and his unsatisfactory relationships with students and parents. *Id.* ¶¶ 22, 41. Dixon also alleges Wicks met with him again in August 2022 and accused him of being unpatriotic and disloyal to America "because he was an angry Black man." *Id.* ¶ 48.

Dixon sued defendants on November 11, 2022, and amended his complaint twice. The operative complaint—the second amended complaint—was filed September 14, 2023. Dixon lodges seven claims in his second amended complaint: (1) a claim against all defendants for race

3

discrimination in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000a ("Title II"); (2) a claim against all defendants for retaliation on the basis of race in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000a; (3) a claim against all defendants in their official capacities under 42 U.S.C. § 1983 for violation of Dixon's First Amendment rights; (4) a claim against Royal Live Oaks and CIE violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); (5) a claim against all defendants for conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985; (6) a claim against all defendants for failure to act in violation of 42 U.S.C. § 1986; and (7) a claim against Congressman Clyburn under 42 U.S.C. 1983 for violation of Dixon's First Amendment right to free speech. *See generally id.*

Defendants moved to dismiss all Dixon's claims pursuant to Rule 12(b)(6), FRCP. On March 18, 2024, United States Magistrate Judge Molly H. Cherry issued a report and recommendation recommending the court dismiss all Dixon's claims except for Dixon's first cause of action against Wicks and Royal Live Oaks for racial discrimination in violation of § 1981. Dixon timely objected to the magistrate judge's report and recommendation on May 5, 2024. [*See generally* ECF No. 95.] Dixon does not raise any specific objections to the magistrate judge's report and recommendation; instead, he merely reiterates that he has pleaded sufficient facts to satisfy Rule 12(b)(6), FRCP's pleading standard. *See generally id.* Dixon also, alternatively, requests the court's leave to amend his complaint "to correct errors of pleading and cure the defects in the Complaint, in light of [the] Magistrate's Report and Recommendation." *Id.* at 3.

4

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66thge F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[a]n the absence of *specific* objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

Because Plaintiff is proceeding pro se, the court is charged with liberally construing the pleadings to allow him to fully develop potentially meritorious claims.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  That said, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts

which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

## MOTION TO DISMISS STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion under Rule 12(b)(6) the "complaint must complain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

## DISCUSSION

As discussed above, three motions to dismiss were before the magistrate judge: (1) Wick and Royal Live Oaks' motion to dismiss, ECF No. 72; (2) Congressman Clyburn and Reed's motion to dismiss, ECF No. 73; and (3) the CIE Defendants' motion to dismiss, ECF No. 74. Given the number of claims and the separate motions to dismiss, the magistrate judge resolved the motions on a claim-by-claim basis. The court follows suit and addresses each claim in turn below.

## I.     First and Second Causes of Action – Race Discrimination and Retaliation in Violation of 42 U.S.C. §§ 1981 and 2000a

The magistrate judge here recommends the court allow only Dixon's § 1981 race discrimination claim to proceed against Wicks and Royal Live Oaks; she recommends the court dismiss the rest of Dixon's first and second causes of action in their entirety. [*See* Report at 8–15.] Dixon objects to this recommendation, arguing only that he properly alleged all defendants

6

violated §§ 1981 and 2000a and that, taken as true, his factual allegations are sufficient to survive a motion to dismiss. [*See* Objections at 1–2.] Having thoroughly considered the parties' substantive briefing, the report, and Dixon's objections, the court overrules Dixon's objections and adopts the magistrate judge's recommendations as to his first cause of action.

### A.     42 U.S.C. § 1981 – Race Discrimination

Section 1981 "guarantees to all persons in the United States ' the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Dixon here "must ultimately establish both that the defendant[s] intended to discriminate on the basis of rase, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). Dixon must also "initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). So, to survive a motion to dismiss Dixon must allege facts that, accepted as true, allow the court to infer that (1) the defendants intended to discriminate because of Dixon's race; (2) the discrimination interfered with a contractual interest of Dixon's; and (3) Dixon would not have suffered an interference with that contractual interest *but for* his race. *See Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022).

Dixon here alleges the defendants "discriminated against him because of his race, relative to his rights to be free from racial discrimination *in the making of contracts of employment* in violation of 42 U.S.C. Section 1981 . . . ." Second Am. Compl. ¶ 76 (emphasis added). As noted above, the magistrate judge recommends the court dismiss this claim as to every defendant except Wicks and Royal Live Oaks. As to Congressman Clyburn and Reed, Dixon does not allege any facts suggesting Congressman Clyburn or Reed employed Dixon or that they had any control over

7

his employment. *See* Report at 12. She recommends the court dismiss this claim against the CIE Defendants for similar reasons: though Dixon alleges the CIE Defendants either approved of or failed to prevent his employer and supervisor from discriminating against him, those allegations are conclusory and, thus, insufficient to survive the CIE Defendants' motion to dismiss. *See id.* at 12–13. Finally, she recommends the court allow Dixon's claim to proceed against Wicks and Royal Live Oaks since he specifically alleges that Wicks, while acting as Royal Live Oaks' Executive Director, "admonished" him "for being 'Too Black'" and did so while informing Dixon that his teaching contract would not be renewed. *See id.* at 13–15; *see also* Second Am. Compl. ¶¶ 41–42.

Having thoroughly considered the report and Dixon's objections, the court agrees with the magistrate judge's recommendations. First, Dixon's allegations concerning Congressman Clyburn and Reed relate to their alleged actions during the 2022 congressional campaign including, but not limited to, Congressman Clyburn's alleged blocking of Dixon on Twitter. Nowhere does Dixon allege Congressman Clyburn or Reed engaged in any sort of racial discrimination against Dixon— much less *intended* to—or that they interfered with any contractual relation of Dixon's. Dixon's racial discrimination claim against Congressman Clyburn and Reed thus fails.

Dixon's racial discrimination claim against the CIE Defendants fails, too, as it is supported only by conclusory allegations. Dixon generally alleges the CIE Defendants have "non-delegable duties to oversee and manage the operations of" Royal Live Oaks and that Wicks was "acting under the policies, directions and supervision" of the CIE Defendants when she terminated Dixon. *See* Second Am. Compl. ¶¶ 32–39, 43. He also alleges Wick's stated reasons for Dixon's termination were "pretextual and an effort to conceal the real motivation of" Wicks and the CIE

Defendants: "racial animus and retaliation for his political challenge to [Congressman] Clyburn." *Id.* ¶ 44.   But Dixon pleads no *factual* allegations sufficient for the court to draw a reasonable inference that the CIE Defendants intended to discriminate against Dixon because of his race.   At most, and as will be discussed further below, Dixon's allegations allow the court to draw a reasonable inference that *Wicks*—and through Wicks, Royal Live Oaks—intended to discriminate against Dixon because of his race.   But Dixon pleads no other allegations sufficient to allow this court to impute Wicks' alleged actions to the CIE Defendants.   So, we dismiss Dixon's racial discrimination claim against the CIE Defendants.

Finally, we turn to Wicks and Royal Live Oaks.   The magistrate judge here recommends the court allow Dixon's claim to proceed against these defendants.   *See* Report at 13–15.   We agree.   Accepting Dixon's factual allegations as true—which the court is required to do on a motion to dismiss—Wicks' alleged statements against Dixon—specifically, that he was "an angry Black man"—and her alleged admonition that Dixon was "'Too Black'" and that he should "reduce the appearance of what they believed were his racial and ethnic characteristics and political speech that alienated him from some students, parents and staff" allow the court to reasonably infer that Wicks intended to discriminate against Dixon because of his race.   *See* Second Am. Compl. ¶ 42. That Wicks allegedly made these comments contemporaneously with informing Dixon that his contract would not be renewed supports a reasonable inference that the discrimination interfered with Dixon's contractual interest.   *See id.* ¶¶ 41–42.   While Dixon alleges Wicks also cited insubordinate behavior and unsatisfactory relationships with students and parents as reasons she would not renew his contract, her alleged comments concerning Dixon's race also support a reasonable inference that she would not have terminated Dixon's contract but for his race.   *See id.*

Finally, Wicks was allegedly Royal Live Oaks' executive director at the time she terminated Dixon's contract, leading to an inference that Wicks' conduct is imputable to Royal Live Oaks. *See id.* ¶ 65.

For these reasons, we overrule Dixon's objections to the magistrate judge's recommendation as to his claim for racial discrimination and adopt it in full: the court dismisses Dixon's racial discrimination claims against Congressman Clyburn, Reed, and the CIE Defendants. His claim for racial discrimination may proceed against Wicks and Royal Live Oaks.

### B.     42 U.S.C. § 2000a – Title II

We next consider Dixon's Title II claim. Title II entitles "[a]ll persons . . . to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). "Public accommodations" include establishments providing lodging to transient guests, facilities principally engaged in selling food for consumptions on the premises, gas stations, entertainment or exhibition places, and establishes physically located within those premises or within which is a premises identified as a "public accommodation" under the statute. *Id.* at § 2000a(b). The statute notably neglects to include schools in the list of "public accommodations," and courts in this circuit and elsewhere have held that schools do not, in fact, constitute public accommodations. *See, e.g.*, *Deberry v. Davis*, No. 1:08-cv-00582, 2009 WL 3228061, at *3 (M.D.N.C. Sept. 30, 2009) ("Schools, be they public or private, are conspicuously absent from this list. This does not mean, of course, that plaintiffs are barred from bringing any sort of civil rights action against schools with discriminatory practices; it simply means that their cause of action arises under another

statute."); *Gilmore v. Amityville Union Free School Dist.*, 305 F. Supp. 2d 271, 279 (E.D.N.Y. 2004) (public schools are not public accommodations under § 2000a); *Harless by Harless v. Darr*, 937 F. Supp. 1351, 1354 (S.D. Ind. 1996) ("Public schools do not purport to be open to the general public in the ways that, for example hotels, restaurants, and movie theaters (all establishments explicitly covered by Title II) do.")  Notably, a plaintiff lodging a Title II claim cannot recover damages, as such a suit is "private in form only."  *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401 (1968); *see also Ajuluchuku v. Bank of Am. Corp.*, No. 3:06-cv-00122, 2007 WL 952015, at *2 (W.D.N.C. Mar. 27, 2007) (finding plaintiff failed to state a claim for relief under §2000a because he sought only money damages).

The magistrate judge here recommends the court dismiss Dixon's Title II claim in its entirety for several reasons.  Having considered Dixon's objections, we agree.  To begin, his claim fails against all defendants because he only seeks money damages.  *See* Second Am. Compl. ¶¶ 78–79 (requesting compensatory, consequential, actual, and punitive damages, and costs and attorneys' fees), Prayer for Relief (seeking only compensatory damages, punitive damages, and costs and fees).  Under *Piggie Park*, then, his claim fails.  *See Piggie Park*, 390 U.S. at 401.  But Dixon's claim would still fail even if he sought injunctive relief.  He has not alleged Congressman Clyburn or Reed denied him full and equal enjoyment in any goods or services in a place of public accommodation.  Nor does he allege either defendant operates such a place.  And, as discussed above, courts have found that schools are not considered public accommodations under Title II. Because Dixon's Title II claims are based on discrimination that allegedly occurred at Royal Live Oaks, a school, his claim against Wicks, Royal Live Oaks, and the CIE Defendants fail as well.

For these reasons, we adopt the magistrate judge's recommendation and dismiss Dixon's Title II claim.

### C.    42 U.S.C. §§ 1981 and 2000a – Retaliation

Dixon next alleges all defendants retaliated against him "because of his race and for engaging in protected activity as provided under the First Amendment to the U.S. Constitution, running for public office and filing an EEOC complaint and enjoying the full benefit of all laws as is enjoyed by white citizens." Second Am. Compl. ¶ 81. The magistrate judge recommends the court dismiss this claim in its entirety. As noted above, Dixon objects to that recommendation, stating that his factual allegations, taken as true, state a retaliation claim. We disagree.

We first consider Dixon's retaliation claim under § 1981. At the outset, the court notes Dixon does specifically allege *how* defendants retaliated against him in connection with this claim. *See* Second Am. Compl. ¶ 81 (alleging only that he "was retaliated against"). Such an allegation strikes the court as conclusory and, therefore, insufficient to prevail on a motion under Rule 12(b)(6). However, in connection with another claim, Dixon alleges defendants retaliated against him "by way of not renewing his contract." *Id.* ¶ 86. Considering the already favorable standard a plaintiff enjoys on a motion to dismiss, which is compounded when that plaintiff is *pro se*, the court will infer defendants allegedly retaliated against Dixon by not renewing his contract in connection with this claim. With that in mind, § 1981 "encompasses retaliation claims for opposing race discrimination in employment." *Ali v. BC Architects Engineers, PLC*, 832 Fed. App'x 167, 172 (4th Cir. 2020) (internal citation omitted). An employee "opposes race discrimination when she 'communicates to her employer a belief that the employer has engaged in' such discrimination." *Id.* (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.,*

*Tenn.*, 555 U.S. 271, 276 (2009)).  A prima facie retaliation claim under § 1981 has three elements: (1) the plaintiff engaged in a protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal link between the two events.  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc).

Dixon claim here fails for much the same reason his first cause of action fails.  As to Congressman Clyburn and Reed, he does not allege how they could have interfered with his employment, or why they would do so.  As for the remaining defendants, he does not allege any facts that would allow this court to infer that he opposed race discrimination in his employment.  Nor does he allege that his employer took adverse action against him *because of* his opposition to racial discrimination.  And he does not allege facts sufficient to show he engaged in a protected activity.  His § 1981 retaliation claim thus fails.  Moreover, Dixon's 2000a-based retaliation claim fails for the same reasons his 2000a-based racial discrimination claim fails, as discussed in Section I.B. above.

For these reasons, the court overrules Dixon's objections and adopts the magistrate judge's recommendation in full as to Dixon's first and second causes of action.  It dismisses those claims in full with the exception of his § 1981 racial discrimination claim against Wicks and Royal Live Oaks.

## II.    Third Cause of Action – § 1983 Claim for Violation of Dixon's First Amendment Rights

Dixon next asserts a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights.  According to Dixon, defendants, "individually and in their official capacities retaliated against plaintiff, by way of not renewing his contract, because of his race and because he chose to

13

run for elected public office and exercise his rights and privileges secured by the Constitution and laws of the United States, as provided by the First Amendment to the U.S. Constitution."  Second Am. Compl. ¶ 88.  Here again, the magistrate judge recommends we dismiss the claim in full and again Dixon objects solely on the grounds that his complaint "provides sufficient facts, if taken as true" to properly state a claim for violation of his First Amendment rights under § 1983.  *See* Report at 17–20; Objections at 2.  Having thoroughly considered the magistrate judge's report, Dixon's objections, and the applicable law, we overrule Dixon's objections and adopt the magistrate judge's recommendation to dismiss this claim.

A state actor who causes the "deprivation of any rights, privileges, or immunities secured by the Constitution" is liable under § 1983.  *Doe v. Rosa*, 795 F.3d 429, 437 (4th Cir. 2015).  To state a claim under § 1983, Dixon "must allege the violation of a right secured by the Constitution and laws of the United States, and he must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017). He must also "affirmatively show[] that the official charged acted personally in the deprivation of" his rights.  *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal citation omitted).

Dixon here alleges defendants deprived him of his right to run for public office, which he says is protected by the First Amendment.  The right to run for public office is not, in fact, protected by the First Amendment.  *See Loftus*, 848 F.3d at 285 ("[W]e have never recognized a First Amendment right to hold elected office[.]").  Indeed, the Supreme Court has held, and the Fourth Circuit has recognized, that "public employers may permissibly bar their employees from participating in a wide array of political activities, including running for elective office." *Id.* at 287.  This is because "public employees who desire to hold elected office face restrictions different

14

from those faced by non-public employees by virtue of the special trust and responsibilities of being a public employee." *Id.* at 285.

Against this backdrop, the court agrees with the magistrate judge: we must dismiss Dixon's § 1983 claim. As to Congressman Clyburn and Reed, and as discussed above, Dixon does not allege *any* facts that allow us to infer that either defendant acted personally in the alleged deprivation of his rights: he does not allege either defendant was his employer or that they had authority to not renew his contract. *See* Report at 18. Nor does he allege any of the alleged actions these defendants took were under color of state law. *Id.* Finally, Dixon does not plead any facts suggesting non-renewal of his contract violated his First Amendment rights, particularly where case law makes clear that Dixon does not *have* a First Amendment right to run for office. Put simply, the factual allegations, taken as true for purposes of the motion, are not sufficient to state a claim against either defendant.

We dismiss the claim against the CIE Defendants for the same reasons. Here, too, Dixon does not allege sufficient *facts* for us to infer that any of the CIE Defendants acted *personally* in not renewing Dixon's contract. *Id.* at 19. And he does not allege facts sufficient for the court to infer that not renewing his contract violated his First Amendment rights. *Id.* Finally, we dismiss this claim against Wick and Royal Live Oaks. As the magistrate judge notes, Dixon *has* alleged Wicks acted personally in not renewing Dixon's contract. *Id.* at 19–20. However, and as discussed above, the Fourth Circuit has not recognized a First Amendment right to run for public office.

For these reasons and having reviewed and considered Dixon's objections and the applicable law, the court adopts the magistrate judge's report and recommendation as to Dixon's

third cause of action and incorporates it in full.  The court thus dismisses Dixon's third cause of action against all defendants.

## III.    Fourth Cause of Action – Violation of Title VII of the Civil Rights Act of 1964

Dixon here asserts Title VII claims against Royal Live Oaks and CIE.  Under Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" *or* discriminate against its employee "because he has opposed any practice made an unlawful unemployment practice by this subchapter."  *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).  The magistrate judge recommends the court dismiss Dixon's Title VII claim against CIE but allow his claim against Royal Live Oaks to proceed to discovery.   Dixon objects, stating he "properly alleges violations of Title VII against all defendants, with the argument that plaintiff failed to exhaust administrative remedies are completely without merit."  Objections at 2.  The court agrees with the magistrate judge.

A plaintiff must exhaust his administrative remedies before bringing claims under Title VII and may do so by bringing a charge with either the Equal Employment Opportunity Commission (the "EEOC") or, in South Carolina (a "deferral" jurisdiction), an appropriate state or local agency. 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1).  A plaintiff's Title VII claims are subject to dismissal if he does not first exhaust his administrative remedies.  *See Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999) (dismissing Title VII claim where plaintiff did not exhaust administrative remedies).  A plaintiff must generally file the discrimination charge no later than 180 days after the alleged unlawful employment practice.  *Gerald v. Olsten*, No. 4:20-cv-2555-CMC-KDW, 2021 WL 1394669, at *2 (D.S.C. Feb. 9, 2021) (citations omitted), *report and*

16

*recommendation adopted*, No. 4:20-cv-2555-CMC, 2021 WL 960509 (D.S.C. Mar. 15, 2021). If the plaintiff lives in a deferral state and state law proscribes the alleged practice, then that limitation period may extend to 300 days if the plaintiff first files the charge with a state deferral agency. *Id.*

Notably, a plaintiff must administratively exhaust *each* incident of discriminatory treatment. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). And the plaintiff cannot later exceed the scope of the charge filed with the EEOC or deferral agency; the Fourth Circuit limits a plaintiff's later lawsuit to the confines of those discrimination claims stated in the charge, reasonably related to the charge, or developed by a reasonable investigation of the charge. *See King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976) ("The suit filed may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge.'"). And while a plaintiff need not make a prima facie case to survive a motion to dismiss, his complaint must still satisfy *Twombly* and *Iqbal*'s pleadings standard. *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017), *as amended* (Aug. 11, 2017) (citing *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

Turning to Dixon's claims, we agree with the magistrate judge: his Title VII claim against CIE fails. As an initial matter, Dixon does not allege facts sufficient for the court to infer that CIE is (or was) Dixon's employer. *See* Second Am. Compl. ¶ 40 (alleging he was employed by Royal Live Oaks until May 2022). And though Dixon presented a charge of discrimination to the EEOC, that charge identifies "Royal Live Oaks Academy," *not* CIE, as the entity that allegedly discriminated against him. [*See* ECF No. 74-1.] Dixon does not allege CIE took any

17

discriminatory action against him in the EEOC charge, nor does he reference CIE at all.  *See id.*
As the magistrate judge notes, Dixon does not dispute that his EEOC charge does not identify CIE.
[*See generally* ECF No. 86-2.]  Dixon has thus failed to exhaust his administrative remedies against
CIE, and his Title VII claim against it fails.

On the other hand, Dixon *has* sufficiently stated a claim against Royal Live Oaks.  We note
here that Royal Live Oaks did not object to the magistrate judge's recommendation that the court
allow this claim to proceed to discovery.  If a party does not object to a recommendation, the court
need not provide an explanation for adopting the recommendation and must "only satisfy itself
that there is no clear error on the face of the record in order to accept the recommendation."
*Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ.
P. 72 advisory committee's note).  The court, having thoroughly reviewed the report, the applicable
law, and the record in accordance with this standard, finds no clear error and adopts the
magistrate's recommendation, incorporating it by reference here.  Dixon's Title VII claim against
Royal Live Oaks will thus proceed to discovery.

## IV.     Fifth and Sixth Causes of Action – Violations of 42 U.S.C. §§ 1985 and 1986

Dixon lodges his fifth cause of action, violation of § 1985, against all defendants for
"knowingly and intentionally, individually and in their official capacities, conspired to interfere
with" his civil rights by not renewing his contract "because of his race and because he chose to run
for elected public office and exercise his rights and privileges secured by the Constitution and the
laws of the United States, as provided by the First Amendment to the U.S. Constitution."  Second
Am. Compl. ¶ 96.  His sixth cause of action alleges all defendants failed to act to prevent his civil
rights from being violated in violation of § 1986.  *Id.* ¶ 101.

A person can violate § 1985 by: (1) preventing an officer from performing his duties; (2) obstructing justice or intimidating a party, witness, or juror; or (3) depriving persons of rights or privileges.  42 U.S.C. § 1985.  Though Dixon does not specifically identify which subsection defendants allegedly violated, process of elimination led the magistrate judge and leads this court to conclude Dixon is attempting to state a claim against defendants under subsection (3).  *See* Report at 26, n.3.  That subsection imposes liability on "two or more persons" who "conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  Dixon must prove the following to state a claim under § 1985(3):

> (1) a conspiracy of two or more persons; (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).  Dixon cannot merely allege in a conclusory manner that defendants violated § 1985; instead,  he must "show an agreement or a meeting of the minds by the defendants to violate the plaintiff's constitutional rights."  *Id.*  Conclusory allegations will not suffice: the Fourth Circuit "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner[.]"  *Id.* at 346 (quoting *Simmons*).  Indeed, the *Soc'y Without A Name* court found a plaintiff's claim could not survive a motion to dismiss where the allegations amounted to "parallel conduct and a bare assertion of a conspiracy" and lacked any allegations concerning "the persons who agreed to the alleged conspiracy, the specific

communications amongst the conspirators, or the manner in which any such communications were made." *Id.* at 347.

So too, here. Dixon alleges in a conclusory manner that the defendants conspired to interfere with his civil rights. *See* Second Am. Compl. ¶ 96. He does not allege any fact which, taken as true, allows the court to infer any meeting of the minds among defendants. For that matter, he does not even allege there *was* a meeting of the minds among defendants. The Fourth Circuit has noted the "relatively stringent standard for establishing section 1985 conspiracies." *Simmons*, 47 F.3d at 1377. Dixon has not met that standard. We thus adopt the magistrate judge's recommendation and dismiss his claim for violation of § 1985.

As Dixon's § 1985 claim goes, so goes his § 1986 claim. "A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985." *Trerice v. Summons*, 755 F.3d 1081, 1085 (4th Cir. 1985). The magistrate judge thus recommends the court dismiss Dixon's § 1986 claim based on her recommendation that the court dismiss his § 1985 claim. *See* Report at 28. The court agrees. Having conducted a *de novo* review of defendants' motions to dismiss Dixon's § 1985 claim and adopted the magistrate judge's recommendation to dismiss that claim, Dixon's § 1986 claim cannot lie. The court thus adopt the magistrate judge's recommendation and dismiss his claim for violation of § 1985.

For these reasons, the court overrules Dixon's objections, adopts the magistrate judge's recommendations, and dismisses Dixon's fifth and sixth causes of action.

## V.     Seventh Cause of Action

We turn, at last, to Dixon's seventh and final cause of action for violation of 42 U.S.C. § 1983, which he lodges solely against Congressman Clyburn. Dixon here alleges Congressman

Clyburn, in his official capacity, retaliated against Dixon because of his criticisms of Congressman Clyburn.  Second Am. Compl. ¶ 106.  According to Dixon, Congressman Clyburn retaliated against him by blocking him from and muting Dixon from Congressman Clyburn's Twitter account and by preventing Dixon from commenting in Twitter, a public forum.  *Id.*  Congressman Clyburn's actions allegedly caused Dixon "sever[e] harm," preventing him from "exercising his rights and privileges secured by the Constitution and Laws of the Untied States, as provided by the free speech provisions of [the] First Amendment to the U.S. Constitution."  *Id.*  Dixon seeks money damages, and money damages only, in connection with this claim.  *See id.* ¶¶ 109–10.  The magistrate judge recommends dismissing this claim for two reasons.  First, she notes Dixon attempts to sue Congressman Clyburn in his official capacity as a United States Congressman and he is not, therefore, a person acting under color of state law.  *See* Report at 30.  Next, she notes that even if the court were to liberally construe Dixon's complaint as attempting to bring a claim for damages against Congressman Clyburn pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), "special factors" counsel against extending *Bivens*' holding to this context.  *See id.* at 30–32.  Dixon objects to the magistrate judge's conclusion, arguing he "provides sufficient facts, if taken as true, [to] meet the minimum requirements for a First Amendment Violation."  *See* Objections at 2.  Having thoroughly considered the applicable law, the magistrate judge's recommendations, and Dixon's objection, we overrule Dixon's objection and adopt the magistrate judge's recommendation.

First, the § 1983 claim.  As the magistrate judge notes, § 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State*," deprives someone of a federal constitutional or statutory right.  42 U.S.C. § 1983

(emphasis added); *Bulger v. Hurwitz*, 62 F.4th 127, 135 (4th Cir. 2023) ("42 U.S.C. § 1983 authorizes plaintiffs to bring an action for money damages against *state and local* government officials who, while acting 'under color of *state law*,' violated the plaintiff's constitutional rights.") (emphasis added).  "[T]here is no statutory counterpart under which plaintiffs can sue federal officials for constitutional violations."  *Bulger*, 62 F.4th at 135.  Dixon here seeks to hold Congressman Clyburn, in his official capacity, liable for violations of his First Amendment rights under § 1983.  But Dixon repeatedly alleges Congressman Clyburn was acting "in his individual capacity and in his official capacity: as a Member of the *United States* Congress."  Second Am. Compl. ¶ 27; *see also id.* at ¶¶ 1, 23–27, 105–10.  Dixon has not pled allegations sufficient for the court to infer Congressman Clyburn acted under color of state law in allegedly depriving Dixon of his First Amendment rights.  So, to the extent Dixon seeks to hold Congressman Clyburn liable under § 1983, the claim fails.

Next, we consider whether Dixon has plausibly stated a claim under *Bivens*, which "provides the federal analog to § 1983 claims."  *Bulger*, 62 F.4th at 135.  To date, the Supreme Court has only recognized an *implied* cause of action to sue federal officials for damages in three circumstances: (1) violations of the Fourth Amendment; (2) gender discrimination in violation of the equal protection component of the Fifth Amendment's due process clause; and (3) deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment.  *See Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023).  The Supreme Court has roundly rejected every attempt to extend *Bivens* to other contexts and has "handed down a trilogy of opinions not only expressing regret over its *Bivens* cases but also demonstrating hostility to any expansion of them."  *Id.* (internal citations omitted); *see also Johnson v. Terry*, 112 F.4th 995, 1006 (11th Cir. 2024) ("[T]he

Supreme Court has stated as clearly as the English language permits: 'I[f] we were called on to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution.'") (quoting *Egbert v. Boule*, 596 U.S. 482, 502 (2022)).

All that said, *Bivens* is alive for the time being,[1] and the court "must engage in a 'two-step inquiry' when analyzing would-be *Bivens* claims." *Mays*, 70 F.4th at 202. We first ask whether the claim falls within the causes of action the Supreme Court already authorized in its prior *Bivens* cases or whether it arises in a new context or involves a new category of defendants. *See id.* We must construe the scope of existing *Bivens* actions narrowly since the court's "understanding of a 'new context' is 'broad.'" *Id.* If the claim *does* arise in a new context, we then ask "whether there are any special factors that counsel hesitation" about extending *Bivens*. *Id.* (internal citations omitted). This "'special factors' inquiry must focus on 'separation-of-powers principles' and 'requires courts to ask whether judicial intrusion into a given field is appropriate.'" *Id.* (citing *Bulger*, 62 F.4th at 137.) Our deference to Congress here is significant: if "there is *any* reason to think that Congress *might* be better equipped to create a damages remedy" we cannot extend *Bivens* to a new context. *Id.* (internal citation omitted) (emphasis added). Notable for our purposes, the Supreme Court has expressly and repeatedly declined to extend *Bivens* to claims sounding in the First Amendment. *See Egbert*, 596 U.S. at 499 ("[W]e hold that there is no *Bivens* action for First Amendment retaliation."); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to extend *Bivens* to

---

[1] The Fourth Circuit recently extended *Bivens* to a federal prisoner's claims of excessive force in violation of the Eighth Amendment against individual prison officers. *See Fields v. Fed. Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024) (Richardson, J. dissenting).

federal employee's claim that he was improperly disciplined for exercising his First Amendment rights).

We agree with the magistrate judge's recommendation: we cannot extend *Bivens* to Dixon's claim. As the Supreme Court noted, "[e]xtending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing such costs," and "in light of these costs, Congress is in a better position to decide whether or not the public interest would be served by imposing a damages action." *Egbert*, 596 U.S. at 499 (internal citations omitted). Here, "special factors"— guidance straight from the Supreme Court itself—counsel against extending *Bivens* to Dixon's First Amendment claim, which is certainly a "new context" compared to the Fourth, Fifth, and Eighth Amendment claims the Supreme Court previously recognized. *Bivens*, then, cannot save Dixon's claim.

For these reasons, we adopt the magistrate judge's recommendation and dismiss Dixon's seventh cause of action against Congressman Clyburn.

## VI.    Motion to Strike

Wicks and Royal Live Oaks also moved to strike certain portions of Dixon's complaint, specifically his request for punitive damages and other references they deem "immaterial" to his claims. *See generally* ECF No. 72-1 at 21–24. The magistrate judge recommends the court strike Dixon's request for punitive damages in his Title VII claim—Paragraph 94 under his fourth cause of action—and deny the remainder of Wicks and Royal Live Oaks' motion. Report at 33–35. Neither Dixon nor Wicks and Royal Live Oaks objected to the magistrate judge's recommendation. The court thus, having thoroughly reviewed the report, the applicable law, and the record in accordance with this standard, finds no clear error and adopts the magistrate's

recommendation, incorporating it by reference here. Dixon's request for punitive damages in Paragraph 94 of his compliant is stricken.

## VII. Request for Leave to Amend

In his objections, Dixon argues the magistrate judge "fail[ed] to acknowledge that correction to pleadings could cure many of the defects in the complaint cited by magistrate" and that she "faile[ed] to give proper weight to the pro se plaintiff's inability to properly construct the pleading and ignore deficiencies that could be cured by amendment." Objections at 3. After much consideration the court declines to allow Dixon additional opportunities to amend his complaint. Dixon amended his complaint *twice* before the magistrate judge issued thereport and recommendation: once after the Wicks, Royal Live Oaks, and the CIE Defendants moved to dismiss his original complaint, and then again after the parties completed briefing on all defendants' motions to dismiss his amended complaint. Unlike the previous instances, Dixon did not request leave to amend his complaint for a *third* time before the magistrate judge issued her report and recommendation. Dixon's second amended complaint was still deficient after two prior attempts to amend his complaint. For these reasons, the court denies his request to amend his complaint a third time. Instead, it directs the parties to proceed expeditiously to discovery on Dixon's two remaining claims.

## CONCLUSION

After thoroughly considering the parties' briefing, the magistrate judge's report and recommendation, Dixon's objections, and the applicable law, the court overrules Dixon's objections and adopts the report and recommendation, ECF No. 87, in full. The court **GRANTS IN PART** defendants Wicks and Royal Live Oak's motion to dismiss and motion to strike, ECF

No. 72; **GRANTS** defendants Congressman Clyburn and Reed's motion to dismiss, ECF No. 73; and **GRANTS** the CIE Defendants' motion to dismiss, ECF NO. 74.

The court hereby dismisses all claims against Congressman Clyburn, Reed, and the CIE Defendants, and dismisses those parties from this case.  It also dismisses all claims against Wicks and Royal Lives Oaks except Dixon's first cause of action for racial discrimination in violation of § 1981 and fourth cause of action for violation of Title VII.  As recommended by the magistrate judge, the § 1981 claim will proceed to discovery as to both Wicks and Royal Live Oaks and the Title VII claim will proceed against Royal Live Oaks.  All dismissals are with prejudice.

Finally, Dixon's request for punitive damages in Paragraph 94 of his complaint is stricken.  This matter remains with the magistrate judge for pretrial matters.

**IT IS SO ORDERED.**

September __, 2024                                          Sherri A. Lydon
Columbia, South Carolina                          United States District Judge

26