IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Gregg Marcel Dixon,<br><br>                              Plaintiff,<br><br>v.<br><br>Royal Live Oaks Academy of the Arts &<br>Science Charter School and Karen Wicks,<br><br>                              Defendants. | C/A No. 9:22-cv-04198-SAL<br><br><br><br>**ORDER** |

Plaintiff Gregg Marcel Dixon ("Plaintiff") brings this employment discrimination action against his former employer, Royal Live Oaks Academy of the Arts & Sciences Charter School (the "Academy"), and the Academy's Executive Director, Karen Wicks ("Defendant Wicks") (collectively, "Defendants"). In this action, Plaintiff pursues two causes of action: (1) race discrimination in violation of 42 U.S.C. § 1981 against both Defendants; and (2) race discrimination in violation of Title VII solely against the Academy. *See* ECF Nos. 65 & 99. Defendants moved for summary judgment on both causes of action, ECF No. 140, which Plaintiff opposed, ECF No. 146.

This matter is before the court on the Report and Recommendation (the "Report") issued by United States Magistrate Judge Molly H. Cherry, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), recommending Defendants' motion be denied. [ECF No. 149.] Both Defendants and Plaintiff objected to the Report. [ECF No. 151,152.] For the reasons that follow, the court adopts the Report and denies Defendants' motion for summary judgment.

1

**LEGAL STANDARDS**

I.   **Review of a Magistrate Judge's Report**

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id*. To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id*. (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id*. But "[i]n the absence of specific objections . . . , this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009) (emphasis in original).

II.  **Summary Judgment**

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the

evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *See id*. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). That said, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). When a party fails to establish an element essential to that party's case, there is no genuine issue of material fact, and the movant is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate.").

Pro se filings are given liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This "[l]iberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (citation omitted); *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (noting "we are obliged to construe [a complaint's] allegations liberally and with the intent of doing justice"). However, principles requiring generous construction of pro se complaints do "not require courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Giving liberal construction does not mean that the court can ignore a pro se plaintiff's clear failure to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d

3

387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

## DISCUSSION

On September 26, 2025, the magistrate judge issued a thorough Report and Recommendation. The Report sets forth in detail the relevant facts and standards of law on this matter, and the court incorporates those facts and standards without a full recitation.[1] *See* ECF No. 149. In the Report, the magistrate judge concluded the record contained genuine disputes of material facts regarding each element of Plaintiff's § 1981 claim and concerning whether Plaintiff's race motivated the Academy's decision not to renew his contract under his Title VII claim. *Id.* at 24, 28. Therefore, the magistrate judge recommended this court deny Defendants' motion for summary judgment. *Id.* at 28.

Defendants' specific objections are as follows:

1) The Report misapplies the stringent direct evidence standard by elevating a stray, ambiguous remark, untethered to the decision-making process, into purported proof of discriminatory motive;

2) The Report improperly expands § 1981 beyond its statutory scope by treating a discretionary decision not to enter into a new contract as interference with an existing contractual right;

---

[1] Plaintiff's objections do not challenge the Report's legal analysis or ultimate recommendation but generally attempt "to preserve the accuracy of the factual record" by attaching an affidavit from Plaintiff, which purportedly disputes certain factual statements in the Report. *See* ECF No. 152. The Report, however, properly viewed all evidence and inferences in favor of Plaintiff and did not weigh the evidence's credibility in finding in Plaintiff's favor. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-69 (4th Cir. 2015) (discussing the court's factual role during summary judgment). Therefore, the court incorporates the Report's facts in this order without addressing Plaintiff's affidavit. Plaintiff will be able to address his factual concerns when this case proceeds to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]").

3) The Report disregards the Supreme Court's but-for causation requirement under § 1981 and ignores abundant evidence of legitimate, nondiscriminatory reasons for the Academy's decision;

4) The Report incorrectly deems the nonrenewal of a fixed-term contract an "adverse employment action" under Title VII, contrary to controlling Fourth Circuit precedent; and

5) The Report erroneously concludes that race was a motivating factor under Title VII based solely on speculation and an ambiguous statement, ignoring undisputed nondiscriminatory explanations.

*See* ECF No. 151. The court addresses these objections below.

**I.     Factual Summary**

The court has adopted the magistrate judge's detailed factual summary, but a brief overview of the facts, taken in the light most favorable to Plaintiff, is helpful here.

The Academy was established in 2012 as a public charter school. [ECF. No. 149 at 6.] It serves students in Beaufort and Jasper Counties, mostly minorities and those with economically disadvantaged backgrounds. *Id.* From its formation and at all relevant times here, Defendant Wicks has served as the Academy's Executive Director. She hired Plaintiff as one of the Academy's first teachers in 2012. *See id*. During his first eight years of teaching with the Academy, Plaintiff was an effective educator, earning numerous awards and accolades for increasing his students' academic performance. *See id*.

Beginning around the 2020–21 school year, however, Defendant Wicks and her staff started to receive complaints from students, parents, and staff members about Plaintiff's behavior and his interactions with them. *Id.* These complaints included allegations that Plaintiff's hostility caused students to fear him. *Id.* As a result, Defendant Wicks met with Plaintiff to discuss these concerns and to correct his behavior. *Id.* at 7.

5

After that meeting, Defendants continued to receive complaints about Plaintiff and parents asked if their children could be removed from his class. *Id.* at 7. In January 2022, Defendant Wicks and other Academy staff met with Plaintiff to address ongoing concerns with his behavior. *Id.* at 8. During this meeting, an Academy staff member mentioned how Plaintiff's comments at an earlier staff conference made him uncomfortable. *Id*. There, Academy staff members were asked to discuss what motivated them, to which Plaintiff responded, "justice for black Americans because we have yet to receive it from this country." *Id*.; ECF No. 147, Audio One, dated 2022_01_24 at 3:39-4:42.

> In addressing this staff member's concern, Defendant Wicks said,
>
> > I think it's a judgment call as to when we bring up what, you know, whatever the case may be, it's a judgment call as to the appropriateness of the time and the, um, the venue for whatever it may be. Because it can appear, at times, with things of that nature, that I did not hear but I have two people of color here who were both there. . . . It makes you appear like you're the angry black man, but you're not the angry black man. You are an educated black man.

[ECF No. 147, Audio One, dated 2022_01_24 at 22:14–22:59.] In response, Plaintiff said, "No, I'm sorry, but I am, indeed, an angry black man." *Id*. at 22:59-23:08 Defendant Wicks then redirected the conversation back to how Plaintiff's behavior affected his students, stating

> What you said in that meeting is one thing. I'm not really even talking about that . . . . You can't not recognize, surely, that some children cannot be ready to learn if they feel belittled or if they feel that they're afraid to raise their voice or they're afraid of what you're going to say that will shut them down.

*Id*. at 29:20–30:16. Plaintiff understood this criticism and agreed to work on his tone with students. [ECF No. 149 at 10.]

Throughout the remainder of the 2022 school term, Defendant Wicks and various staff continued to meet with Plaintiff to discuss and improve his behavior and interactions with students. *Id.* at 10–13. During these meetings, the Academy staff mainly took issue with his angry and

sarcastic tone, loud voice, and tendency to yell, which they believed hindered some of his student's ability to learn. *Id.* While Plaintiff noted many students found his intense and loud personality to be humorous and effective, he appeared to understand how other students could benefit from a softer approach. *See id.*

Around this time, Defendants gave Plaintiff an improvement plan to assist him with softening his tone toward students. *Id.* at 12; ECF No. 140-9. Yet Plaintiff disagreed with the language in the plan and met with Defendant Wicks and other staff to vocalize his concerns and suggest changes. ECF No. 149 at 12–13. Plaintiff understood that he needed to use a softer tone with his students, but he took issue with the plan's "specific action" language, which he believed could be more positively written. *Id.* at 13. He emphasized to Defendants he was running for political office, and such language could be taken out of context. *Id.*

As the 2021–22 school year ended, Defendant Wicks decided not to renew Plaintiff's contract for the following school year due to his purported "ongoing issues and blatant refusal to work on improving." *Id.* at 14 (quoting ECF No. 140-2, Wicks Aff. ¶ 21). Defendant Wicks then met with Plaintiff to inform him of this decision. *Id.* During the meeting, Defendant Wicks told Plaintiff, "You do not seem like a happy person. You have seemed less and less happy over the course of the school year. And, you know, at one point I talked about you being an angry black man." Plaintiff recalled that conversation and responded, "And I said, well yeah, I am." Defendant Wicks then responded, "Right, well, that is not good for children. You know that." [ECF No. 147, Audio Five dated 2022_05_12 at 1:40–2:04.] She further stated, "I know what you have accomplished. I mean, there are a lot of things that you accomplished here, and they mean something. But I don't want you here when you are this angry. Because you are. And it affects the children in negative ways." *Id.* at 3:03–3:36. After this meeting, Plaintiff continued to work and

7

receive pay for the remainder of his fixed-term contract, with no changes in job responsibilities. [ECF No. 149 at 15.]

## II. Race Discrimination Claim – 42 U.S.C. § 1981

As referenced above, the magistrate judge concluded there were genuine issues of material fact as to Plaintiff's § 1981 claim and thus recommended denying Defendants' motion for summary judgment. Defendants' first three objections relate to that recommendation. To prove his § 1981 claim, Plaintiff must establish that (1) Defendants intended to discriminate on the basis of race; (2) the discrimination interfered with a contractual interest; and (3) the interference with a contractual interest would not have happened but for Plaintiff's race. *See Resendiz v. Exxon Mobil Corp.*, 72 F.4th 623, 628 (4th Cir. 2023); *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022); *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006); *see also Hawthorne v. Va. State Univ.*, 568 F. App'x 203, 204–05 (4th Cir. 2014) ("To make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action, and the claim must be predicated on the actor's personal involvement." (citation and internal quotations omitted)). The magistrate judge found Plaintiff produced sufficient evidence to create a genuine question of material fact as to each element. Defendants, however, object to the magistrate judge's analysis on every element. The court addresses each of these objections below.

### A. First Element – Intent to Discriminate on the Basis of Race

Defendants object to the Report's conclusion that a reasonable jury could find Defendant Wicks' comment at the May meeting directly evidences racial discrimination, arguing the magistrate judge misapplied the direct evidence standard by elevating a stray, ambiguous comment into proof of discrimination. [ECF No. 151 at 4.]

Under the first § 1981 element, a plaintiff can demonstrate the defendant intended to discriminate on the basis of race through direct evidence of discrimination. *See El Ali v. Barr*, 473 F. Supp. 3d 479, 516 (D. Md. 2020) (finding direct evidence of discrimination may be considered as evidence of discriminatory intent); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) ("Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."). Direct evidence of discrimination "is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023); *see also Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999), *overruled on other grounds* (finding direct evidence "clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action"). Derogatory comments constitute direct evidence of discrimination if they are "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023) (adopting the test set forth in *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010)).

The court agrees with the Report's conclusion that Plaintiff has produced sufficient evidence to create a genuine question of material fact as to the first element of his § 1981 claim. [ECF No. 149 at 20.] During the May meeting addressing the Academy's reasons for not renewing his contract for the following school year, Defendant Wicks told Plaintiff, "You do not seem like a happy person. . . . [A]t one point I talked about you being an angry black man." Plaintiff

9

responded, "And I said, well yeah, I am," to which Defendant Wicks replied, "Right, well, that is not good for children." [ECF No. 147, Audio Five at 1:40–2:04.] Viewing this evidence in a light most favorable to the Plaintiff, this derogatory comment falls within the *Jackson* test for direct evidence of discrimination. The comment was related to Plaintiff's race; proximate in time to Defendant Wicks' decision not to renew Plaintiff's contract; made by Defendant Wicks, the individual with authority over the decision not to renew; and related to the nonrenewal decision, as the comment was given as a reason for such. *See Jackson*, 602 F.3d at 380.

While, as Defendants proclaim, the Fourth Circuit refuses to consider stray or ambiguous comments as direct evidence of discrimination, *see Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) (deeming a coworker's derogatory remark a stray comment given the eighteen-month gap between the statement and the plaintiff's termination), Defendant Wicks' comment was neither ambiguous nor stray as it directly referred to Plaintiff's race in a negative light and was made while explaining the Academy's reasons for not renewing Plaintiff's contract. A reasonable jury could conclude such a comment was direct evidence of discrimination, creating a question of fact as to whether Defendants intended to discriminate against Plaintiff on the basis of his race. Consequently, the court finds the Report properly applied the direct evidence standard and overrules Defendants' objection.

### B. Second Element – Interference with a Contractual Interest

Defendants' next objection takes issues with the Report's conclusion that Defendants' nonrenewal of Plaintiff's contract constituted contractual interference under § 1981, contending the finding expands the statute beyond its text and interpretation. [ECF No. 151 at 6.]

Section 1981's second element requires Plaintiff to demonstrate Defendants' discrimination interfered with a contractual interest. *See Resendiz*, 72 F. 4th at 628; *see also*

*Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999) ("A § 1981 action, then, must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)."). The statute defines these interests broadly to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C.A. § 198(b); *Spriggs*, 165 F.3d at 1017–18.

Here, Defendant argues this statutory definition does not apply to the nonrenewal of a contract because employees no longer have contractual rights once their fixed-term contracts expire by their own terms, and the statute does not extend to mere expectations of future employment. [ECF No. 151 at 6.] Defendants assert that because Plaintiff's contract expired at the end of the school year and did not contain guarantees of renewal, their failure to renew the contract could not and did not impair Plaintiff's right to make, perform, or enforce a contract. Defendants merely declined to enter into a new agreement. *Id.*

Defendants' argument, however, overlooks the statute's focus on protecting an individual's right to "make" contracts. § 1981(a); *Spriggs*, 165 F.3d at 1017 ("Section 1981 guarantees to all persons in the United States the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." (internal citation omitted)). The Supreme Court has interpreted this provision broadly. In *Patterson v. Mclean Credit Union*, the Supreme Court found that discrimination in promotion could be an actionable contractual interest under § 1981 if it involved the "opportunity to enter into a new contract with the employer" because such discrimination would interfere with the plaintiff's right to make contracts. 491 U.S. 164, 185–86 (1989), *overruled on other grounds*. Contractual renewal is analogous to an actionable promotion under *Patterson* because it is an opportunity to make a new contract with an employer. *Jones v. U.S. Postal Serv.*, No. CIV. A. 89-

399-CMW, 1990 WL 5198, at *4 n.19 (D. Del. Jan. 26, 1990). Therefore, the magistrate judge did not improperly extend the statute when it held "a decision not to make a new contract for the following school year on the basis of race could give rise to a §1981 claim." [ECF No. 149 at 22.] For this reason, Defendants' second objection is overruled.

### C. Third Element – But-For Causation

Defendants' third objection argues the Report disregards the Supreme Court's but-for causation requirement under § 1981 because it gave little weight to the documented history of Plaintiff's performance issues, focusing on a single, stray remark instead. [ECF No. 151 at 4.]

Under the third element for a § 1981 claim, Plaintiff must demonstrate that the nonrenewal would not have happened but for his race. *Resendiz,* 72 F.4th at 628; *see also Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) ("A plaintiff must also show that the interference with a contractual interest would not have happened but for the plaintiff's race."). The Supreme Court, while discussing this but for standard, held a plaintiff must "ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Defendants argue Plaintiff cannot meet this burden because the record is replete with evidence of legitimate, nondiscriminatory reasons for the Academy's decision not to renew Plaintiff's contract. [ECF No. 151 at 7.] Defendant Wicks' racial comment in the May meeting was merely a single, stray remark that the magistrate judge improperly elevated over all other evidence establishing Plaintiff's race was not the decision's cause. *Id.* To support this assertion, Defendants contend "[t]he Fourth Circuit has repeatedly rejected § 1981 claims where plaintiffs rely on stray remarks or speculation while ignoring robust, documented non-discriminatory explanations," citing *Mereish v. Walker*, 359 F.3d 330 (4th Cir. 2004). *Id*. *Mereish*, however, does not discuss a

claim brought under § 1981. It merely holds that under an ADEA claim, "general or ambiguous remarks referring to the process of generational change create no triable issue of age discrimination." *Id.* at 337. As discussed above, Defendant Wicks' comment was neither ambiguous nor stray and provides a legitimate inference of racial discrimination.

Regardless, the court at summary judgment cannot weigh the evidence. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 570 (4th Cir. 2015). Defendants are correct that the record contains evidence supporting an inference of Plaintiff's race did not motivate the Academy's decision. Yet at this stage, the court must construe all inferences in Plaintiff's favor to determine whether Plaintiff has put forward enough evidence for a reasonable jury to conclude the nonrenewal would not have happened but for his race. *See Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 254 (4th Cir. 2025). The magistrate judge followed this standard when she found a reasonable jury could conclude Defendant Wicks' May meeting comment demonstrated she considered Plaintiff's race in her decision not to renew the contract. [ECF No. 149 at 23.] Therefore, the court finds the Report properly applied the but-for causation requirement in context of summary judgment and overrules Defendants' third objection.[2]

Because the court overrules all objections pertaining to Plaintiff's § 1981 discrimination claim, the court adopts the Report's recommendation to deny summary judgment as to this claim.

---

[2] Defendants also argue the "same actor" inference demonstrates Plaintiff's race was not the but for cause of the Academy's decision not to renew his contract. [ECF No. 151 at 7.] The same actor inference holds that when the same decisionmaker both hires and later terminates an employee within a short period, a strong inference arises that discrimination was not a determinative factor in the adverse employment action. *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991). This inference, however, does not apply here because Defendant Wicks hired Plaintiff in 2012 and failed to renew his contract in 2022—a span of ten years. *See Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653 (4th Cir. 2021) (holding the same actor inference did not apply when the adverse employment action occurred eight years after the plaintiff was hired).

### III.    Title VII Race Discrimination Claim

Defendants' final two objections relate to the Report's recommendation to deny summary judgment as to Plaintiff's Title VII race discrimination claim against the Academy. Title VII prohibits employers from failing or refusing to hire or discharging any individual or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). A plaintiff can prove an employer engaged in one of these "unlawful employment practice[s]" if he demonstrates that race "was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m).

Under this mixed-motive theory of liability, a plaintiff "can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (further explaining that "the impermissible factor need not have been the sole factor" and that "[a]s long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice"); *see Duvall v. Novant Health, Inc.,* 95 F.4th 778, 788 (4th Cir. 2024) (explaining that "a mixed-motive plaintiff faces a lessened causation standard than but-for causation" (citation and internal quotation marks omitted)).

The magistrate judge found the record presented genuine disputes of material facts as to whether Plaintiff's race motivated, at least in part, the Academy's adverse employment action of not renewing his contract. [ECF No. 149 at 28.] Defendant objects to the conclusions that the

nonrenewal was an adverse employment action and that race was a motivating factor. The court addresses these two objections below.

### A. Adverse Employment Action

Defendants' fourth objection contends the Report incorrectly deems the nonrenewal of Plaintiff's fixed-term contract as an adverse employment action under Title VII, stating such a decision is contrary to Fourth Circuit precedent.

To prevail on his Title VII claim, Plaintiff must prove the Academy subjected him to an adverse employment action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) ("[T]he existence of some adverse employment action is required."). An adverse employment action is "one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (internal citations omitted).

Defendants argue that because the Academy merely failed to renew Plaintiff's fixed-term contract, their action does not fall into Fourth Circuit precedent requiring that an adverse employment action materially alter the terms, conditions, or benefits of employment. [ECF No. 151 at 8–9.] Defendants' argument, however, fails to consider how the Fourth Circuit includes "hiring" under the adverse employment action umbrella. *Hoyle*, 650 F.3d at 337. Failing to renew Plaintiff's fixed term contract is analogous to failing to hire him. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 500-02 (2d Cir. 2009), *superseded by statute on other grounds* (reasoning that the nonrenewal of a contract is analogous to failing to hire); *see also Donaldson v. Clover Sch. Dist.*, No. CV 0:15-1768-MBS, 2017 WL 4173596, at *2 (D.S.C. Sept. 21, 2017) (holding employers

decision not to renew a plaintiff's contract was an adverse employment action); *Mckoy v. Charlotte-Mecklenburg Sch.*, No. 3:10CV494, 2011 WL 1869958, at *6 (W.D.N.C. May 16, 2011) ("[P]laintiff's claim that her contract was not renewed is an adverse employment action."). Further, such an action constitutes a significant change in Plaintiff's employment status, as he is no longer allowed to work at the Academy. *Hoyle*, 650 F.3d at 337. Therefore, the court finds the Academy's nonrenewal of Plaintiff's contract constitutes an adverse employment action under Title VII and overrules Defendants' objection.

### B. Motivating Factor

Defendants' final objection posits the Report erroneously concludes race was a motivating factor in the Academy's decision not to renew Plaintiff's contract because the magistrate judge based her conclusion solely on a stray, ambiguous statement, ignoring undisputed, nondiscriminatory explanations.

Under the mixed-motive theory of liability, Plaintiff's Title VII claim can survive a motion for summary judgment if he presents direct or circumstantial evidence that raises a genuine issue of material facts as to whether his race motivated the Academy's decision not to renew his contract. *Diamond*, 416 F.3d at 318; *Duvall*, 95 F.4th at 788. The magistrate judge found Plaintiff met this burden because Defendant Wicks' May comment directly evidences racial discrimination, creating a genuine dispute of material fact as to whether race motivated the Academy's decision. [ECF No. 149 at 26]. The court agrees with the magistrate judge. Defendant Wicks' comment is not an ambiguous, isolated remark, as Defendants suggest, but direct evidence of discrimination that creates a genuine issue of material fact. *See* supra § II.A. While Defendants correctly point out the record contains evidence suggesting race was not a motivating factor, the court's role at summary judgment is not to decide which party's evidence is more persuasive. *Wannamaker-Amos*, 126

16

F.4th at 262-63. Therefore, the Report correctly found a genuine dispute of material fact as to whether Plaintiff's race motivated the Academy's adverse employment action against him. The court, then, overrules Defendants' final objection. Having overruled both of Defendants' objections to the Report's conclusion on Plaintiff's Title VII claim, the court adopts the Report's recommendation that summary judgment be denied as to this claim.

## CONCLUSION

As outlined above, each of Defendants' objections are overruled, and the court adopts the Report and Recommendation of the magistrate judge. Defendants' motion for summary judgment, ECF. No. 140, is therefore **DENIED**.

**IT IS SO ORDERED.**

October 27, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge